IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY HAMILTON )
)
    Plaintiff, )
)  Civil Action No. 03-1142 (HHK)
        Vs. )
)
MEL R. MARTINEZ, )
DEPARTMENT OF HOUSING & )
        DEVELOPMENT )
        Defendant. )
)

**PLANTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT**

COMES NOW Plaintiff, Gary Hamilton, files this Opposition to Defendant's Motion for

Summary Judgment.

**I. INTRODUCTION**

**A. STANDARDS OF REVIEW**

Under the theory advanced by the Defendant Agency[1], it is entitled to

summary judgment as a matter of law, Defendant bears a heavy burden of

overcoming all favorable inferences to which the Plaintiff is entitled.

Pursuant to Rule 56 of the Federal Rules of Civil Procedures, summary

judgment should be granted only if "there is no genuine issue as to any

material fact and the (.....) moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). It is settled law that the moving

---

[1] The Defendant styles her support for her motion for summary judgment due to lack Plaintiff's failure to
establish a prima facie case under the ADEA. Further and additionally Defendant styles her support for her
motion for summary judgment due to Plaintiff failure to demonstrate pretext regarding his claim under Title
VII.

Party bears the burden of demonstrating the absence of any genuine issue of material facts. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970): Richardson v. National Rifle Association, 871 F.Supp. 499 (D.C. 1994). Thus, the Defendant (IIUD) is entitled to a summary judgment Only if the evidence of record show s that there is no genuine issue(s) of material fact and that the moving party is entitled to judgment as a matter of law. (Id.) As the Court is aware, there have been no depositions, no answers to interrogatories, or answers to admissions. Defendant and Plaintiff may only rely upon there pleadings, and the current record of evidence which has been limited by the lack of discovery or Plaintiff's presentation of his own case and cross-examination of the defendant's witnesses.

Further stated summary judgment for the defendant is premature at this point of the case, (e.g. no discovery, no cross-examination of defendant's witnesses, etc) under the McDonnell Douglas framework. A brief review of the McDonnell Douglas framework is in order: The complainant must first establish a prima facie case of prohibited discrimination. See McDonnell Douglas, 411 U.S. at 802. Once he has done so, the burden then shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment decision. See id. Should the employer succeed in presenting such reasons, the burden then shifts back to the complainant, who then the plaintiff has "the full and fair opportunity to demonstrate, through presentation of his own case and through cross-examination of the defendant's witnesses, `that the proffered reason was not the true reason for the employment decision, and that race [or some other discriminatory basis] was." Id. at 507-08 (quoting Burdine, 450 U.S. at 256) (citation omitted).

2

## B. BACKGROUND

The Defendant advertised and the Plaintiff applied for the position of Environmental Scientist/Industrial Hygienist, General Schedule (GS)-1301-13/14. Plaintiff was not interviewed for subject position and learned of his non-selection on or about November 6, 2001. Plaintiff contacted the Defendants EEO counselor timely.

The selecting official selected a white female for the subject position. Plaintiff filed his complaint of discrimination with the Defendant dated March 4, 2002. After 180 days of filing his complaint Plaintiff entered this claim in this court.

## II. ARGUMENT

The Defendant argues that the Plaintiff was not selected for the position of Industrial Hygienist/Environmental Scientist because "Plaintiff lacked the housing experience" to be selected for the position of GS-13/14 Environmental Scientist/Industrial Hygienist." The referring official, Mr. Friedman states that "experience in housing related health issues was a specific factor in determining the candidates to select and that the office needed technical expertise in health and housing issues."

## Knowledge, Skills and Abilities Listed in the Defendants Vacancy Announcement as Necessary to Successfully Perform the Job:

1. Skill and experience in the design and performance of research, policy analysis, and/or program evaluation.

2. Knowledge of environmental sciences, particularly in relation to building

environments.

3. Knowledge of biological hazard and lead-based paint evaluation and reduction methods and programs for buildings.

4. Skill and experience in writing complicated technical material that meets rigorous standards of defensibility and is expressed in clear, concise, and grammatical English.

5. Skill and experience in quantitative analysis of large data sets, including the use of standard statistical analysis or spreadsheet software.

Comparative Analysis of Plaintiff versus Selectee Qualifications

Plaintiff will prove by a preponderance of the evidence that he possesses superior qualifications compared to that of the selectee. The Plaintiff will introduce expert witness testimony during discovery that will assert his superior qualifications. Further it is the Plaintiff expert will prove that the selecting official(s) knew of the superior nature of the Plaintiff's qualifications by virtue of their highly creditable knowledge of the public health network or industry.

The skills and abilities sought by the Defendant to fulfill his requirements of the job are interdisciplinary in nature, e.g. the job titles recruited by the Defendant was either an Industrial Hygienist or Environmental Scientist. With this said, a little background of the applicable professional trade is necessary.

**Background:** There are many sub-specialties or job titles, including the sub-Specialties that the Defendant sought, e.g. Industrial Hygienist or physical scientist. Others physical science type professions under the selectee's series, include chemist,

geologists, biologists, meteorologists, physicists, etc that serve a broader network profession. This profession is known as "Pubic Health". Public Health is defined as "those services with the mission to fulfill society's interest in assuring conditions in which people can be healthy." Public health carries out its mission through organized, interdisciplinary efforts that address the physical, mental and environmental health concerns of communities and populations at risk for disease and injury. Its mission is achieved through the application of health promotion and disease prevention technologies and interventions designed to improve and enhance quality of life." These sub-specialties, including that of the defendant selectee, e.g. research chemist interact and operate to make the public health network.

### _"Professionals in Public Health". V "Public Health Professionals"._

Professionals occupying any of these sub-specialty areas are considered "professionals in public health". In contrast professionals educated and trained specifically in the field of public health (e.g. masters of public health), which the Plaintiff has and the Selectee does not are considered "public health professionals". It is important to note that there are vast differences between the two groups. The Defendant's selectee is considered and recognized by the public health community as a "Professional in Public Health". Whereas the Plaintiff is considered and recognized by the public health community as a "Public Health Professional".

The difference is much like comparing a "Physician Assistant" to that of a "Board Certified Physician". Specifically stated, the difference between the two is that the

"Public Health Professionals" training vastly exceeds the training (both in managerial and technical aspects) of that of a Professional in Public Health. The Public Health Professional can provide immediate and long-term benefits to his employer from this higher level of management training. This superior management and leadership capabilities allows the Public Health Professional to readily and effectively develop policy decisions and conduct evaluations dramatically far above that expected from a Professional in Public Health.

As a Public Health Professional, the Plaintiff possesses skills and abilities greatly exceeding that of the selectee. Specifically, the knowledge and skills of the selectee is limited to a few sub-specialties, e.g. chemistry, physics, geology, etc gained during formal education added to environmental science principles and theory gained during her experience. In contrast the Plaintiff processes skill and training in addition to that of the Selectee and further, e.g. environmental science; environmental health and health protection, both technical programmatic components; as well as in epidemiology, biostatics, toxicology, biostatics, health scientific (software-Computer) application (SAS), health management/administration, public policy, Risk assessment and reduction, risk communication, environmental Law and social dynamics. The professionals in public health, such as in the case of the selectee possesses a limited and narrow education in public health, e.g. chemistry coupled with some Undermined environmental experience.

The Defendant sought either one of two of the available sub-specialties in the Public

Health Network, e.g. Environmental Scientist or Industrial Hygienist. These two sub-specialties are explained in detail below:

The sub-specialty "physical science" is classified in a group series designated General Schedule (GS) series "1301 – General Physical Science Series". This series includes positions that involve professional work in the physical sciences when there is no other more appropriate series, (that is, the positions are not classifiable elsewhere). This series also includes work in a combination of physical science fields, with no one predominant.

The defendant "environmental scientist" is included in this grouping, e.g. not classifiable elsewhere. It is suggested that the combination of selectee's physical science areas areas are environmental science and chemistry.

The sub-specialty "Industrial Hygienist" is classified in a group series designated General Schedule (GS) series 0690 – Industrial Hygiene Series. This series includes all positions with duties that are to advise on, administer, supervise, manage, or perform professional and scientific work in industrial hygiene, including the identification and evaluation of conditions affecting the health and efficiency of employees, or the citizens of the adjacent community, the formulation and recommendation of measures to eliminate or control occupational health hazards, and the promotion of occupational health programs for instructing and motivating managers and employees in the prevention as well as correction of potential health hazards.

7

## *Comparison of Qualifications: from the Defendant's knowledge, Skills and Abilities.*

Number 1. "Design", "Policy" and "Program Evaluation".

These keywords would imply that the Defendant needed the talents of a Public Health Professional (Plaintiff) as opposed to that of a Professional in Public Health (Selectee). The Plaintiff has such knowledge and skills that can only be gained by academic achievement of a Masters Degree in Public Health. From an experience vantage point, the Plaintiff's application (Defendant Exhibit 16, p.7) reveals he has a superior amount of hands on "design policy analysis, program evaluation, and/research of several environmental programmatic issues or concerns, including lead in targeted housing, commercial and industrial structures." The plaintiff's application goes further to state that he has had "the responsibility to perform policy analysis of various environmental hazards, including lead health hazards, in addition to a multitude of toxic chemical/particulates, biological or physical stressors....".

Nothing here would dramatically separate the selectee (or would indicate an enhancement thereof) compared to those skills cited by the Plaintiff. Further, these skills and abilities stated by are dramatically unexpected for someone (such as the selectee) working in a technical area at the equivalent of a federal employee general schedule 12 or 13.

Number 2. Knowledge of Environmental Science, particularly in relation to building environments.

The Defendant alleges that the selectee possesses more housing and health related experience. However, It is unclear as to whether the number of years the selectee

8

possesses with regard to the number of years she actually worked while with Research Triangle Institute. The "From Date" states "5/1987" and the ending date have no entry (Plaintiff Exhibit 1).    Additionally, the majority of her experience is in the area of grants management. An excerpt of the selectee's work experience states that "she supported HUD's Healthy Homes Program Manager through grant management, information dissemination, developing criteria and electronic templates for program evaluation, developing a framework for problem solving, presentation , coordinating sessions at conferences, review of technical material related to safety and health in housing, and summarizing grantee assessment and intervention methodologies" ( Plaintiff Exhibit 2) . The selectee's other experience beginning in 8/1998 to 04/1999 (8 months) reveals "bench/analytical chemistry related experience and managing the Lead Listing." The selectee states (Defendant Exhibit 17, p.6) that she "worked for the past 10 months providing environmental health and program support to the U.S. Department of Housing and Urban Development (HUD's) Healthy Homes Program". The Selectee does not list any information on her employer or associated experience in the "work experience block " (Defendant Exhibit 17, p.2.). The selectee application states "Prior to this work I was unaware of the magnitude of health and safety hazards in the "built" (misspelling) environment and interventions for mitigating these hazards." (Plaintiff Exhibit 3).  The selectee's own admission as noted here about her recent awareness and training contradicts the very reason that the Defendant uses as their reasons not to hire the Plaintiff.   It is emphasized again that the selectee experience in this admission is limited to 8 months, not vastly as proffered by the defendant. Conversely, the Plaintiff application clearly states his training and

experience starting 09/1991 to 6/1997 applicable to both public facilities and military housing (Defendant Exhibit 16, P 8). Here the Plaintiff states his training "which included courses in occupational and environmental toxicology, occupational medicine, occupational/environmental/environmental epidemiology, and a special project. Additionally, I have taken professional development courses in indoor air quality and design of lead removal/renovation paint projects which provides knowledge of the building structure and components, including mechanical systems."

Further the Plaintiff's application (Defendant Exhibit 16, p 5) states his experience as "Developed and implemented Chesapeake Division's publications used Navy-wide including design manuals, construction guide specifications, maintenance and operations manuals, military specifications and handbooks, etc., and provides required safety and health concepts and criteria. Many of these publications dealt with the lead based paint projects in military targeted housing." From an experience standpoint the Plaintiff has articulated in his application 15 years of experience in a manner indicating his utilization and application of his public health professional knowledge/skills/abilities and that of his sub-specialty field of industrial hygiene (Defendant Exhibit 16).

The Defendant's allegation or reasoning not to hire the Plaintiff, but instead the selectee cites "more housing, environment and health experience" turns up side down when considering the above comparison. Plaintiff's qualifications unquestionably possesses both multiple sub-specialty professional areas of public health, e.g. industrial Degree in Public Health. It is interesting to note that now the Defendant cites the importance of his need for "housing experience" but no where in his knowledge, skills,

10

and abilities does he states "housing" but rather "building" experience. The Plaintiff has articulated in his application 17 years of experience in a manner indicating his utilization and application of his public health professional skills and that of his sub-specialty field of industrial hygiene whereas the selectee's years of experience are unclear.

Nothing here would dramatically separate (or would indicate an enhancement thereof) compared to those skills cited by the Plaintiff. Further, these skills and abilities are not dramatically unexpected for someone (such as the selectee) working in a technical area at the equivalent of a federal employee general schedule 12 or 13. Additionally, nothing here would dramatically separate the selectee (or would indicate an enhancement thereof) compared to those skills cited by the Plaintiff.

Number 3. Knowledge of biological hazard and lead-based paint evaluation and reduction methods and programs for buildings.

The defendant selectee states in her application (defendant Exhibit 17, p 9) means and methods of collecting, assessing and possible remediation techniques for various environmental hazards related to buildings. She lists mold, allergens (cockroaches, rats and mice or pets), pesticides or carbon monoxide (from fireplace, dryers, hot-water heater, etc) and lead dust as a few. She goes further to list various analytical techniques to quantify the hazards, such as gas chromatography/mass spectrometry (GC/MS) or simply GC.

In comparison, the plaintiff lists him experience in deals with the identification, assessment and remediation of lead dust hazards in buildings/housing.

Specifically, he states in his application (Defendant Exhibit 16, p 9) that he "has vast

11

knowledge in the various allowable reduction methods as recommended by

*HUDs Guidelines for the Evaluation and Control of Lead Based Paint Hazards in*

*Housing."* He further states "I am versed in the objective of the lead based paint

risk assessment, the types of risk assessments and inspections that are possible,

what the visual examination portion of the risk assessment identifies, what

building components that should be sampled for a composite sample, what are

the minimum number of sample composite dust samples to be collect, what the four

interim control measures that may be considered when formulating a hazard control

plan."

The Plaintiff's experience shown in his application is limited to lead based paint, but his

vast training experience equivalent in public health – environmental health professional

outweighs that of the selectee (Defendant Exhibit 16, p6), This is especially the case

since the selectee admits to her limited and recent knowledge attainment while working

as a consultant with the defendant agency for 10 months (Defendant Exhibit 17, p 6).

The Plaintiff has vastly greater experience in terms of professional training-equivalent to

that of the Selectee (10 months) experience. The Plaintiff has four (4) years of industrial

hygiene training which is directly related to occupational and community health hazard

evaluations, assessments and remediation focus. This focus covered the Selectee's noted

issues and many more. Added to this undergraduate experience, I Plaintiff has indicated

in his application two additional years of Masters in public health training with a

specialty area of occupational and environmental health (Defendant Exhibit 16, p 6).

Nothing here would dramatically separate the selectee (or would indicate an

enhancement thereof) compared to those skills cited by the Plaintiff

Number 4. Skill and experience in writing complicated technical material that meets rigorous standards of defensibility and is expressed in clear, concise, and grammatical English.

The Selectee lists in her application ( Defendant Exhibit 17, p12-14) her technical publications.  The majority of these publication deals with analytical chemistry publications which has nopolicy, program evaluation or managerial implication or benchmark of writing skills or abilities directly. Only writing samples can positively show directly evidence of such skills and abilities.  To the point of quality of writing skills is only traceable to the publishing source.  Some sources have a strict peer review process and others are much more relaxed.  No inference can be shown as to the quality of written, since it is not present in its entirety.  Quality of writing is merely reflected by a varying degree of peer review shown by individual publishing groups, which are unknowns to the selecting officials then and now.

In contrast by nature of training, the Plaintiff he has written many papers (undergraduate and graduate) on the various analytical methods available to quantify contamination.  In his application (Defendant Exhibit 16, p 10) he states he has "Over the course of his career, including undergraduate and graduate school, prepared many documents, which requires rigorous standards of defensibility and must be clear, concise and grammatically correct".  He goes further in listing documents "case studies dealing with various environmental contaminates such as lead based paints, asbestos and PCBs; prepared standard procedures for the submissions and programming of projects; prepared and submitted Operation's budget documentation for program administration; ……..".

Nothing here would dramatically separate the selectee (or would indicate an enhancement thereof) compared to those skills cited by the Plaintiff. Further, these publications are not dramatically unexpected for someone (such as the selectee) working in a technical area at the equivalent of a federal employee general schedule 12 or 13.

compared to those skills cited by the Plaintiff

e. 5. Skill and experience in quantitative analysis of large data sets, including the use of standard statistical analysis or spreadsheet software.

The selectee's application (Defendant Exhibit 17, p 14) again notes she chemist experience in the Environmental Protection Agency's (EPA) laboratory program Quality Assurance Program. Specifically, she notes using EXEL and Lotus spreadsheets in developing task orders and cost proposals. Again, this experience in QA program execution is not dramatically unexpected for someone (such as the selectee) working in a technical area equivalent of a federal employee general schedule (GS)12 or 13.

In contrast, the Plaintiff application (Defendant Exhibit 16, p 10) states he "have vast amounts of experience in the use of Microsoft Excel spreadsheet software........I have developed a system )using Microsoft Excel and Access) for ranking the projects using a risk matrix that consider: abatement cost, population exposed to the hazard and risk assessment code...This software was a managerial tool to record data consisting of thousand of projects ongoing throughout the Navy."

Nothing here would dramatically separate the selectee (or would indicate an enhancement thereof) compared to those skills cited by the Plaintiff.

14

## *Selectee Given an Unfair Advantage*

The selectee worked as a consultant for the Defendant agency (on-site) for 10 months (Defendant Exhibit 17, p 6) before being selected for the position denied to the Plaintiff. This fact coupled with the admissions of both the referring (Defendant Exhibit 8 p3) and selecting official (Defendant Exhibit 3, p 3) that they were aware of the selector's expertise and knowledge open up the question of whether the selectee as a candidate was similarly situated as a federal civil servant, thus was basically interviewed for the position. If true as argued by the Plaintiff should have been interviewed for the position as well (Defendant Exhibit 20). Similarly situated here means that the selectee and Plaintiff both occupy government office space, use government office equipment, work hours are similar to government personnel, and more importantly has a direct supervisor – employee relationship, etc to that of a federal employee. This relationship is driven by existing market condition, such as customer service competition via personal service contractual relationships.

## III. CONCLUSION

Again as previously stated the Defendant bears a heavy burden of overcoming all favorable inferences to which the Plaintiff is entitled. Pursuant to Rule 56 of the Federal Rules of Civil Procedures, summary judgment should be granted only if "there is no genuine issue as to any material fact and the (....) moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is settled law that the moving party bears the burden of demonstrating the absence of any genuine issue of material facts. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142

(1970): Richardson v. National Rifle Association, 871 F.Supp. 499 (D.C. 1994). Thus, the Defendant (HUD) is entitled to a summary judgment only if the evidence of record show s that there is no genuine issue(s) of material fact and that the moving party is entitled to judgment as a matter of law.

The Defendant bears a heavy burden of overcoming all favorable inferences to which, the Plaintiff is entitled. Additionally, it is premature to grant such motion because of the well established McDonnell Douglas burden shifting framework. After the Plaintiff proves his prima facie case, then the burden shift to the Defendant; the Defendant then is allowed to articulate a "non-discriminatory motive"; and finally the Plaintiff must have a fair opportunity *(emphasis added)* to prove that the given motive is pretext. Therefore based on the above argument proffered by the Plaintiff the Defendant Motion for Summary Judgment should be denied..

There are numerous material facts in dispute. Some of which are:

(1) Whether the Defendant intentionally exaggerates the experience and capabilities of the selectee. Specifically, it is not clear from selectee's application, whether she indeed had 17 years (Defendant Exhibit 17, p. 6) of experience in environmental programs with emphasizes on programs that reduce childhood illnesses. Block 8(1) under experience has a beginning date of 5/1987 but has no related end date identified. The next listed selectee's employer in Block 8(2) begins 8/98 but end after 8 months in 4/99.

(2) Whether a Public Health Professional (Plaintiff) was vastly superior to a Professional in Public Health (Selectee) and thus more qualified for this position.

(3) Whether selectee is a similarly situated employee with respect to the spirit of merit principles with regard to interview provisions (Defendant Exhibit 20). The court should take notice that this particular issue raised is *paramount* in nature due to the 1998 Federal Activities Inventory Reform Act (FAIR). As the court may well know this Act is an ambitious Act. Establish to implement this Act, the OMB Circular, A-76 was created, which requires the replacement of previously non-inherent government functions, e.g. jobs (non-inherently) conducted by civil servants with that of A-76 contractors . This creates an area of employment policy (as is explained later) which has not been addressed currently by OMB. For instance, you have two employees, one civil servant and one A-76 contractor whom are similarly situated with respect to office space, work hours etc,

16

even a vicarious relationship with the federal workgroup supervisor. A job vacancy is announced, which both applies. There are two OPM recognized classification/evaluation systems, one for federal employees (e.g. merit promotion) and the other is called delegated examination authority (DEA). DEA is the one that the contractor would be evaluated under. Each agency has delegated a previous OPM function to examine competitive recruitment actions.     Even though these contract employees provide the same services as once did federal employees, located in the same public office space, using the sample government equipment (telephones, copy machines, fax machines, etc) they are considered under U.S. Office of Personnel Management Delegated Examining Authority (DEA). In this DEA examining environment, the question *arises* is whether the contractor should be considered under the same rules of merit promotion since both are similarly situated. In this instance case, even though the Plaintiff and the Selectee was both similarly situated with regard to being a civil servant employee, the selectee is not required to be interviewed because she is considered under DEA. Whereas, if she would have been considered under merit promotion, her merely working in the same government organization where the promotion is announced she would be considered automatically interviewed since she has a supervisor -- employee relationship with the selecting official(s). In such cases, other candidates (other federal employees) like the Plaintiff would have been interviewed by required procedural rules of merit principle law.

(4) Whether the "job crediting/rating plan" concurs with Defendant's claim that housing and environment experience was given higher weight in the overall rating process.

(5). Whether Plaintiff's training and background  (Masters Degree in Public Health) makes him superior in qualifications to that of the selectee.

Given the above, it is clear that Defendants motion for summary judgment should be denied and the case should proceed to discovery so that the Plaintiff has a fair opportunity as required and discussed above by the well known McDonnell Douglas framework of burden shifting between the Plaintiff and the Defendant to prove pretext by a preponderance of the evidence.

Respectfully submitted,

Gary Hamilton
Plaintiff, Pro Se

17

Civil Action No. 03-1142 (HHK)
PLANTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT

CERTIFICATE OF SERVICE

      I HEREBY certify that I have served a copy of the foregoing upon all parties of record either by hand or placing a copy of the same in the U.S. Mail, postage paid, and delivered to their correct addresses this the ___ day of November 2003.

Ana A. Matheson
Assistant United States Attorney
555 Fourth Street, N.W. Tenth Fl.
Washington D.C.  20530

Alan Burch, Room 10-409
Assistant United States Attorney
555 Fourth Street, N.W. Tenth Fl.
Washington D.C.  20530

Gary Hamilton
Plaintiff, Pro Se